**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | § § § § | CHAPTER 11 |
| RELATIVITY FASHION LLC, ET AL. | § § § | CASE NO. 15-11989 (MEW) |
| DEBTORS. | § § § | (JOINTLY ADMINISTERED) |
| _____ | § § | |
| JANE DOE I, JANE DOE II & JANE DOE III | § § | |
| PLAINTIFFS | § § | |
| V. | § § | ADVERSARY NO._____ |
| LONG POND MEDIA LLC & RELATIVITY MEDIA, LLC | § § § | |
| DEFENDANTS | § | |

**PLAINTIFFS' COMPLAINT OPPOSING DISCHARGE OF CLAIMS**

Plaintiffs Jane Doe I, Jane Doe II and Jane Doe III file this Complaint in opposition to the discharge of claims of Plaintiffs against Defendants Long Pond Media, LLC & Relativity Media LLC as a result of its fraudulent inducement, negligent misrepresentation, intentional infliction of emotional distress and invasion of privacy against Plaintiffs. In support, Plaintiffs would respectfully show the Court as follows:

**I.**
**PRELIMINARY STATEMENT**

1. Television series "8 Minutes" is an A&E "reality" show that was produced by Defendant LONG POND MEDIA NETWORKS LLC & RELATIVITY MEDIA, LLC for A&E TELEVISION NETWORKS LLC in late 2014 and early 2015. The show was filmed in Houston, Texas. Defendants sought out women advertising on escort websites to appear for interviews on the show. Plaintiffs Jane Doe I, Jane Doe II and Jane Doe III were contacted by the agents and/or employees of the Defendants. To procure the parties' attendance on the show, Plaintiffs were told that by appearing on the show, Defendants would provide them the ability to abandon sex work and would provide housing, medical and mental health care, educational, employment, legal and rehabilitation assistance. Plaintiffs were also informed that their faces would be blurred during the airing of the nationally broadcast television program. After filming the show, the Defendants failed to provide any of the promised assistance. Moreover, Defendants did not blur out the faces of Jane Doe II or Jane Doe III[1] during the nationally televised broadcast of the 8 Minutes show.

2. Plaintiffs Jane Doe I, Jane Doe II and Jane Doe III initially brought suit against Defendants Long Pond Media, LLC & Relativity Media LLC, as well as A&E Television Networks LLC, in the District Court for the 133rd Judicial District in Harris County, Texas (the "State Court").

3. On, September 29, 2015, Defendants Long Pond Media, LLC & Relativity Media LLC filed a Notice of Suggestion of Bankruptcy notifying the court that Defendants had

---

[1] While Jane Doe I was promised her face would be blurred out, no episode featuring Jane Doe I aired as the series cancelled mid-season when the revelation of Defendants' deceptive and fraudulent conduct sparked national outrage.

filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code on July 30, 2015. As a result of Defendants' chapter 11 petition, the action in the State Court is stayed. Plaintiffs' claims (the "Claims") against Defendants are non-dischargeable as a result of Defendants' willful and malicious conduct and services obtained by a false representation, or actual fraud that has injured Plaintiffs. Plaintiffs oppose the discharge of the Claims under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

## II.
## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334, and 11 U.S.C. § 523. Liquidation of Plaintiffs' Claims against Defendants are non-core matters for which Plaintiffs are entitled to a jury trial in the State Court Action and do not consent to the bankruptcy judge conducting a jury trial with respect to the Claims. Pursuant to Fed. R. Bankr. P. 7008(a), the Plaintiffs do not consent to entry of final orders or judgments by the bankruptcy judge with respect to the liquidation of the Claims. Count I opposing the discharge of the Claims is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## PARTIES

5.     Plaintiff JANE DOE I is a natural person who at all times relevant to this lawsuit has resided in Harris County, Texas. Her identity will be made known to Defendants when they answer or otherwise appear in this case.

6.      Plaintiff JANE DOE II is a natural person who at all times relevant to this lawsuit has resided in Chambers County, Texas. Her identity will be made known to Defendants when they answer or otherwise appear in this case.

7.      Plaintiff JANE DOE III is a natural person who at all times relevant to this lawsuit has resided in Harris County, Texas. Her identity will be made known to Defendants when they answer or otherwise appear in this case.

8.      Defendant LONG POND MEDIA LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in California, who can be served through its Chief Executive Officer, Tom Forman, 9242 Beverly Boulevard, Suite 300 Beverly Hills, CA.

9.      Defendant RELATIVITY MEDIA, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in California, who can be served through its Chief Executive Officer, Tom Forman, 9242 Beverly Boulevard, Suite 300 Beverly Hills, CA.

## IV.
## BACKGROUND OF THE BANKRUPTCY CASE

10.     On July 30, 2015 , Relativity Fashion, LLC, Relativity Holdings LLC, Relativity Media, LLC, and their affiliated debtors and debtors in possession, including Long Pond Media, LLC each filed a voluntary petition under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of New York.

11.     The Debtors' bankruptcy cases are being jointly administered under chapter 11 Case No. 15-11989.

# V.
# BACKGROUND GIVING RISE TO PLAINTIFFS' CLAIMS AGAINST DEFENDANTS ASSERTED IN THE STATE COURT ACTION

**JANE DOE I**

12.     On or about November 13, 2014, Plaintiff JANE DOE I received a text message from an employee and/or agent of Defendant Relativity Media, Keya "Denise" Mason. Mason stated that she worked for a production company that was producing a TV show in Houston and was looking for women who post online ads for escort services to participate in the filming of a show. Plaintiff JANE DOE I believed this to be a scam and ignored the message. Mason continued to message incessantly, assuring Plaintiff JANE DOE I it was not a scam and set up a time for call.

13.     On or about November 20, 2014, in their first phone call, Mason assured Plaintiff JANE DOE I that there was nothing to be scared about. The producers understood the issues that the "girls" in the "life"[2] are going through and the purpose of the show was to help "women in the life." The show was not to condemn women in "the life" but to provide the necessary support if the women would like to leave.

14.     Mason explained that Pastor Kevin Brown had a significant amount of experience in helping women get out the "life" and that they decided to do the show based on his work. Now that Brown had a powerful production team with him he was able to provide more support and make a bigger impact. They were interested in the women's "stories" for the TV show.

---

[2] A woman engaged in sex work is commonly referred to as being "in the life."

15. Plaintiff JANE DOE I proceeded to tell Mason her story, that Plaintiff JANE DOE I was not a traditional sex worker and indeed had never had sex for money. Many years ago, Plaintiff JANE DOE I was an educated and successful business woman in South America, and had fallen on difficult times and moved to the United States to build a new life with her daughter. Unfortunately, the difficulty continued and Plaintiff JANE DOE I had trouble finding any stable work, and was living from paycheck to paycheck, eviction notice to eviction notice. Plaintiff JANE DOE I searched for work for months, even working a manual labor job as a female in her late forties on a construction site until she fell through a roof and broke multiple ribs. When it became clear there was no other way to provide shelter and food for her family, Plaintiff JANE DOE I decided to post an ad to an escort site without the knowledge of her husband or children.

16. At the end of November 2014, Plaintiff JANE DOE I met Mason and another female at CVS Pharmacy parking lot located at 9838 Buffalo Speedway Houston, TX 77025. Plaintiff JANE DOE I and Mason spoke for two hours about her life. Plaintiff JANE DOE I communicated her concern with going on a national TV show, as no one in her family knew that she was posting ads. "Publicly confessing" to "sex work" on national television would be humiliating, but if doing so would spare her family from the continued and cyclical threat of eviction and hunger, she would do whatever necessary.

17. Plaintiff JANE DOE I presented numerous items to Mason that she expected to be provided by Defendants if she was to appear on the TV show. Plaintiff JANE DOE I discussed at length that she and her family require treatment for significant health conditions. Plaintiff JANE DOE I told Mason about the condition of her eyes deteriorating

and that she was in need of eye surgery. Plaintiff JANE DOE I communicated that she had an unreliable vehicle which limited her ability to secure or maintain a job. Plaintiff JANE DOE I and her family were days away from eviction. Plaintiff JANE DOE I indicated that being in the "life" was likely causing her emotional trauma for which she would likely need emotional counseling.

18. Mason claimed the show was going to be the "life-changing" event that Plaintiff JANE DOE I was looking for. Mason communicated that the show would provide nominal payment up front for her appearance and gas money, but the "real" value provided by the show would be the resources provided for her after she "accepted" the show's help during the airing of the show. Plaintiff JANE DOE I inquired from Mason who would be providing all these resources as she had exhausted church and public assistance and either she did not "qualify" or there were no funds left in the organizations.

19. Mason responded: "Oh please…We are A&E and a Hollywood production company…they have advertisers that are huge companies with tons of connections. Anything you need for them is only a matter a few calls, a car, medical and dental treatment, clothing, an allowance. They will do what it takes to get you and your family back on their feet."

20. Plaintiff JANE DOE I explained that she would also like go to back to school as she had a foreign doctorate degree that was not valid in the United States, and Mason reiterated "anything you need is just a call from my bosses, the producers of the show." Plaintiff JANE DOE I was overcome with emotion by this opportunity and told Mason that she was "like Oprah and Ellen" when she surprises everyone with a brand new car. Mason

responded that this was "exactly" like this situation. Mason told Plaintiff JANE DOE I to bring her paperwork to the next meeting so the "show" could start working on getting Plaintiff JANE DOE I assistance for the items discussed. Mason indicated the interview would be in the second week of December, Plaintiff JANE DOE I would receive a nominal payment for the interview and then would receive the discussed resources. Plaintiff told Mason she would consider the offer and get back with her.

21.     On or around December 8, 2014, Plaintiff JANE DOE I contacted Mason and requested the "bargained-for" assistance prior to the interview, as an eviction notice had been posted and if Plaintiff JANE DOE I waited until after the interview, her family may not have a place to live. Plaintiff JANE DOE I needed $700.00 to prevent the eviction. Mason communicated that the "show" could not give Plaintiff JANE DOE I assistance prior to the interview, but it wouldn't matter because once she did the show she would receive all the assistance she needed from the show to get her "back on her feet," and said the day after the show "your life will change forever."  Plaintiff JANE DOE I responded that she would start today if she could.

22.     Mason told Plaintiff JANE DOE I that the interview would take place on December 11, 2014 and that they needed to meet before to be given some instructions.

23.     On or about December 11, 2014, Mason and Plaintiff JANE DOE I met in the parking lot of the Cheesecake Factory Galleria 5015 Westheimer Rd, Houston, TX. Plaintiff JANE DOE I brought all of her documentation with her, including a letter from her eye doctor and her most recent eviction notice and those related to her rib injury.

24. Plaintiff JANE DOE I was told that the she was to go to Holiday Inn Express, 10609 Westpark Dr, Houston, TX 77042. The Pastor will be pretending to be a "john,"[3] and Plaintiff JANE DOE I is expected to play along as if she believes he is a "john." The Pastor will make you an offer to get out of the life and you will accept his offer. The next day someone will contact you and you will be provided the "resources" discussed to begin your "new life."

25. Mason instructed Plaintiff JANE DOE I to meet her again, around 6:30 P.M. at the Westin Oaks parking lot. Mason put papers on the roof of a car and told her she needed to sign before going on the show. Plaintiff JANE DOE I said "I didn't know I had to sign a contract?"

26. Mason stated that it was not a contract it was just "a document that gave them permission to film Plaintiff JANE DOE I for the interview." Plaintiff JANE DOE I communicated that she could not read the paper at this time of day as it was getting dark outside and her vision was poor. Mason became flustered: "what do you want me to do? Read it to you? We have no time for that! You can trust me!"

27. Mason guided Plaintiff JANE DOE I through the paperwork pointing out what to write and where. At the top blank of the paper, Mason told Plaintiff JANE DOE I to put in her gas money to meet with her that day and that she would get her more money later.

28. Mason, seeing Plaintiff JANE DOE I was shook up, apologized for being abrasive and assured Plaintiff JANE DOE I that this was her "last client" and her last day in "the life" and that her life would change forever.

---

[3] A consumer seeking sex services

29. Plaintiff JANE DOE I's friend then drove her to Holiday Inn Express, 10609 Westpark Dr., Houston, TX 77042. Plaintiff JANE DOE I followed the instructions and arrived at the room where Pastor Brown interviewed Plaintiff JANE DOE I for approximately 40 minutes.

30. Following the interview Plaintiff JANE DOE I was given $250.00 and told by Mason that "a producer will call you to provide you with assistance to start your new life, if you need anything you call me."

31. Shortly after the filming Mason's phone was disconnected and Defendants did not return Plaintiff JANE DOE I's calls requesting the promised help. After weeks of waiting on Defendants to provide assistance that never came, Plaintiff JANE DOE I was left economically and emotionally devastated.

**JANE DOE II**

32. On or around October 2014, Plaintiff JANE DOE II received a text message from an employee and/or agent of Defendant Relativity Media, "Michelle" LNU, who told Plaintiff JANE DOE II that she was producing a show for Defendant A&E about sex work in Houston and inquired as to whether Plaintiff JANE DOE II would be interested in being interviewed.

33. At the time that Plaintiff JANE DOE II received the texts, Plaintiff JANE DOE II was in a substance abuse rehabilitation program at West Oaks Hospital. Employees and/or agents of Defendant Relativity "Kia" LNU and "Sara" LNU [4] visited JANE DOE II twice at the West Oaks hospital to persuade her to appear on the show. In the two meetings at the hospital, "Kia" and "Sara" tried to convince JANE DOE II to appear on the show. Naturally,

---

[4] Plaintiff was informed by "Kia" and "Sara" during this meeting that "Michelle" was a "fake" name.

Plaintiff JANE DOE II was hesitant about appearing on national TV especially regarding the sensitive subject matter of the show. Plaintiff JANE DOE II was assured the show would blur out her face so she would not be recognized; further if she appeared on the show the producers would provide her with resources and support so that she would "never have to do an out-call again," which included medical, housing and employment assistance.

34. Plaintiff JANE DOE II wanted nothing more than to get out of the "life" and with the help that "Kia" and "Sara" guaranteed the show would deliver, this was her opportunity.

35. Prior to the interview, Plaintiff JANE DOE II and her mother met "Kia" and "Sara" to get the details about the filming. Again the same promises were communicated. Plaintiff JANE DOE II would receive medical, housing and employment assistance after Plaintiff JANE DOE II completed the interview. Plaintiff JANE DOE II was driven to the hotel by her mother and she submitted to an hour interview which aired on April 2, 2015. Despite the producers fully knowing that Plaintiff JANE DOE II's mother was driving her to the set, the episode is rife with mentions of a "dangerous trafficker" described as a "male mid-30s" waiting outside of the hotel.

36. After the show, Plaintiff JANE DOE II was paid $200.00 for her appearance and told "we'll be contacting you" to coordinate the promised resources. Plaintiff JANE DOE II never received any of the assistance she was promised in exchange for her appearance on the show.

37. Shockingly, at the end of episode featuring Plaintiff JANE DOE II the show states:

> "[Jane Doe II]" and her daughter are safe in a new location. She accepted treatment for her addiction and is currently receiving services."

**JANE DOE III**

38.     In early January 2015, Plaintiff JANE DOE III was contacted by Defendant "Nicole" LNU who told Plaintiff JANE DOE III that she was producing a show for A&E about sex work in Houston and asked whether Plaintiff JANE DOE III would be interested in submitting for an interview. Plaintiff JANE DOE III said she would think about it and let her know. Plaintiff JANE DOE III called Nicole back and said she would be willing to be interviewed but only if her face was blurred out. Plaintiff JANE DOE III and Nicole agreed that they would meet in person.

39.     A few days later, Plaintiff JANE DOE III and "Nicole" met at Mike Sub's 5393-B Westheimer Road, Uptown Collection, Houston, TX 77056. Nicole handed Plaintiff JANE DOE III a contract which she read over and signed. This contract included a handwritten asterisk and note at the bottom which stated "* face to be blurred." Plaintiff JANE DOE III was told that she would receive $25.00 for signing the paperwork and $150.00 once she performed the interview.

40.     After signing the contract, Nicole handed Plaintiff JANE DOE III another contract and stated: "I forgot to film you signing on my iPhone, here is another copy to sign." Plaintiff JANE DOE III had no reason to believe the second contract was any different than the first one she signed and signed the second contract on film.

41.     A few days later, "Nicole" told Plaintiff JANE DOE III that an Uber taxi would pick her up that night and take her to the hotel Best Western 11611 Northwest Freeway, Houston, Texas, 77092. Nicole called and told Plaintiff JANE DOE III that she would be getting a call from a California number and instructed her to "pretend like it's an outcall."

42. Following the airing of the episode featuring Plaintiff JANE DOE III on April 23, 2015, Plaintiff JANE DOE III was bombarded with phone calls and messages on social media. Family, friends and acquaintances from her small hometown in Kentucky contacted her about her appearance on the show. To this day, Plaintiff JANE DOE III is approached by strangers in public places inquiring about her appearance on "8 Minutes." Most importantly and most hurtful, Plaintiff JANE DOE III had kept her line of work private from her daughter until it was disclosed via national television. As a direct result of A&E and Relativity's breach of its agreement to blur Plaintiff JANE DOE III's face on the show, Plaintiff JANE DOE III has suffered incessant humiliation and embarrassment which continues to this day. Further, the failure to blur out Plaintiff JANE DOE III's face has also put her in danger, as the show's own "advocate" D'Lita Miller stated in the episode featuring Plaintiff JANE DOE III: "I hope that she doesn't reveal to her pimp what's going on here, because if he finds out, there's no telling what could happen."

43. Given Defendants' chapter 11 petition, Plaintiffs' prosecution of the Claims in the State Court Action was stayed pursuant to 11 U.S.C. § 362(a). Plaintiffs intend to seek relief from the automatic stay to liquidate the Claims against Defendants in the State Court Action. Plaintiffs have commenced this proceeding in this Court to oppose the discharge of the Claims against Defendants.

**VI.**
**CAUSES OF ACTION**

**CLAIM I ASSERTED AGAINST DEFENDANTS IN THE STATE COURT ACTION: FRAUDULENT INDUCEMENT**

44. Plaintiff JANE DOE I reaffirms and re-alleges paragraphs 1 to 43 as if fully set forth. Under Texas law, Defendants are liable to Plaintiffs for fraudulent inducement if:

    (1) A material representation was made to Plaintiff;

    (2) The material representation was false;

    (3) When the material representation was made;

    (4) Defendants

        (i) knew that the material representation was false, or

        (ii) made the material representation recklessly without any knowledge of its truth and as a positive assertion;

    (5) Defendants made the material representation with the intent that it should be acted upon by Plaintiffs;

    (6) Plaintiffs acted in reliance upon the representation; and

    (7) Plaintiffs suffered injury or damage.

45. In addition to the matters incorporated from the general allegations above, Defendant represented to Plaintiff JANE DOE I & JANE II that in exchange for their appearances on the 8 Minutes program, Defendants would provide Plaintiffs JANE DOE I & JANE DOE II with resources, including rental/housing assistance, medical assistance and employment assistance.

46. At the time Defendants made the foregoing misrepresentations, they knew them to be false. In fact, at the time the representations were made, Defendants knew that they were not capable and/or had no intention of performing their promises as described to Plaintiffs JANE DOE I & JANE DOE II.

47.     Defendants made the foregoing material misrepresentations with the intent that Plaintiffs JANE DOE I & JANE DOE II would rely on them and submit for an interview for the 8 Minutes TV Program. In reasonable reliance upon the misrepresentations made by Defendants, Plaintiffs JANE DOE I & JANE DOE II agreed to appear on the television show and sustained damages. Had Plaintiffs JANE DOE I & JANE DOE II known the truth, they would not have agreed to appear on the television program.

48.     Not knowing the truth, Plaintiff JANE DOE I & JANE DOE II justifiably relied on the misrepresentations of Defendants and waited weeks for the Defendants to perform as agreed upon. As a direct, foreseeable and proximate result of Plaintiff JANE DOE I & JANE DOE II's justifiable reliance on the misrepresentations of Defendants, Plaintiffs JANE DOE I & JANE DOE II has suffered severe damages.

49.     In addition to the matters incorporated from the general allegations above, Defendants represented to Plaintiffs JANE DOE II and JANE DOE III that they could be comfortable in participation in the filming of the show because their faces would be blurred so that there was no risk of their being recognized.

50.     At the time Defendants made the foregoing misrepresentations, they knew them to be false. In fact, at the time the representations were made, Defendants knew that they had no intention of performing their promises as described to Plaintiffs JANE DOE II and Defendants made the foregoing material misrepresentations with the intent that Plaintiffs JANE DOE II and JANE DOE III would rely on them and submit for interviews for the national TV Program. In reasonable reliance upon the misrepresentations made by Defendants, Plaintiffs JANE DOE II and JANE DOE III agreed to appear on the television

show and sustained damages. Had Plaintiffs JANE DOE II and JANE DOE III known the truth, they would not have agreed to appear on the television program. Not knowing the truth, Plaintiffs JANE DOE II and JANE DOE III justifiably relied on the misrepresentations of Defendants and ended up showing their faces on national TV. As a direct, foreseeable and proximate result of Plaintiffs JANE DOE II and JANE DOE III's justifiable reliance on the misrepresentations of Defendants, Plaintiffs JANE DOE II JANE DOE III have suffered severe damages. Defendants are liable for the acts and omissions of its employees and/or agents under the doctrine of vicarious liability, or respondeat superior.

**CLAIM II ASSERTED AGAINST DEFENDANTS IN THE STATE COURT ACTION: NEGLIGENT MISREPRESENTATION**

51.    Plaintiffs reaffirm and re-allege paragraphs 1 to 50 as if fully set forth. Under Texas law, Defendants are liable to Plaintiffs if:

(1) Defendants provided information in the course of their business, or in a transaction in which it had a pecuniary interest;

(2) The information supplied was false;

(3) Defendants did not exercise reasonable care or competence in obtaining or communicating the information;

(4) Plaintiffs justifiably relied on the information; and

(5) Plaintiffs suffered damages proximately caused by their reliance on the false information.

52. Defendants provided information to Plaintiffs JANE DOE I, JANE DOE II & JANE DOE III in the course of their business and/or in a transaction in which Defendants had a pecuniary interest; The information supplied to Plaintiffs JANE DOE I, JANE DOE II & JANE DOE III regarding rental/housing assistance, medical assistance and employment assistance and the anonymity to be provided if they appeared on the show was false; Defendants did not exercise reasonable care or competence in obtaining or communicating the information; Plaintiffs JANE DOE I, JANE DOE II & JANE DOE III justifiably relied on the information; and Plaintiffs JANE DOE I, JANE DOE II & JANE DOE III suffered damages proximately caused by their reliance on the false information. Defendants are liable for the acts and omissions of its employees and/or agents under the doctrine of vicarious liability, or respondeat superior.

**CLAIM III ASSERTED AGAINST DEFENDANTS IN THE STATE COURT ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

53. Plaintiffs JANE DOE I, JANE DOE II & JANE DOE III reaffirm and re-allege paragraphs 1 to 51 as if fully set forth. Under Texas law, Defendants are liable to Plaintiffs for intentional infliction of emotional distress if:

> (1) Defendants' acts were intentional or reckless;

> (2) Defendants' conduct was extreme and outrageous,

> (3) the acts of the Defendants caused the Plaintiffs to suffer emotional distress; and

> (4) the emotional distress suffered by the Plaintiffs was severe.

54. Defendants acted intentionally or recklessly in promising Plaintiffs JANE DOE I & JANE DOE II that they would provide JANE DOE I & JANE DOE II with the rental/housing

assistance, medical assistance and employment assistance that would enable them to abandon sex work. This conduct was extreme and outrageous. The acts of the Defendants caused Plaintiffs JANE DOE I & JANE DOE II to suffer severe emotional distress.

55.     Defendants acted intentionally or recklessly in promising Plaintiffs JANE DOE II & JANE DOE III that Defendants would blur Plaintiffs' faces on the national broadcast of the 8 Minute show without acquiring proper consent. This conduct was extreme and outrageous. The acts of the Defendants caused Plaintiffs JANE DOE II & JANE DOE III to suffer severe emotional distress. Defendants are liable for the acts and omissions of its employees and/or agents under the doctrine of vicarious liability, or respondeat superior.

**CLAIM IV ASSERTED AGAINST DEFENDANTS IN THE STATE COURT ACTION: INVASION OF PRIVACY**

56.     Plaintiff reaffirm and re-allege paragraphs 1 to 55 as if fully set forth. Defendants by and through their agents intentionally intruded on the Plaintiffs JANE DOE II & JANE DOE III's solitude, seclusion, or private affairs by televising Plaintiffs JANE DOE II & JANE DOE III's faces on a nationally televised show about prostitution. Without permission to show their faces, such intrusion is highly offensive to a reasonable person. Defendants are liable for the acts and omissions of its employees and/or agents under the doctrine of vicarious liability, or respondeat superior.

## VII.
## OBJECTION TO DISCHARGE:
## 11 U.S.C. § 523(a)(2)(A) & 11 U.S.C. § 523(a)(6)

57. Plaintiff adopts and incorporates by reference the allegations set forth in Paragraphs 1 to 56 as though fully set forth herein.

58. As set forth herein, Plaintiffs' Claims—and Defendants' corresponding debt to Plaintiffs—arose from Defendants' willful and malicious injuries to Plaintiffs and/or services obtained by a false representation, or actual fraud. Defendants possessed a subjective motive to cause harm. Furthermore, there was an objective substantial certainty that such harm would occur.

60. Accordingly, Defendants are not entitled to discharge of Plaintiffs' Claims against Defendants.

61. Plaintiffs demand a jury trial.

## VIII.
## PRAYER

62. WHEREFORE Plaintiffs respectfully request an order of the Court that Plaintiffs' Claims against Defendants are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6) and such other just and equitable relief as the Court deems fit.

Dated: October 11, 2015

Respectfully submitted,

**mathias** civil justice pllc

_____
Damon Mathias
Illinois ARDC: 6315558
233 S. Wacker, Suite 9820
Chicago, Illinois 60606
Telephone: 312-738-5323
Facsimile:  312-738-5323
Email: damon@mcjlegal.com